UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

v.

JAMES LANCASTER

Case No. 1:21-cr-00367-TWP-MJD-1

ORDER ON MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (COMPASSIONATE RELEASE)

Upon motion of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motion is:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAMES LANCASTER,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:21-cr-00367-TWP-MJD |

**ORDER**

This matter is before the Court on Defendant James Lancaster's ("Lancaster") Motion for Compassionate Release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A) (Dkt. 78). For the reasons explained below, his motion is **denied**.

## I. BACKGROUND

In January 2022, Lancaster pled guilty to one count of conspiracy to commit bank fraud and one count of theft of mail. (Dkt. 32; 73 at 1.) Lancaster was an employee of the United States Postal Service at the New Augusta Branch Post Office in Indianapolis, Indiana. (Dkt. 68 at 5.) Between May 2020 and June 2021, he used his position at the post office to search through the mail for business checks, remove the checks from the mail, and give them to a co-conspirator. *Id.* The co-conspirator would pay Lancaster for the check then alter the "pay to the order of" line and deposit the check into their account. *Id.* at 5–6. In total, Lancaster removed approximately 272 pieces of mail containing checks from 59 different Indianapolis businesses with a total value of $1.7 million. *Id.* at 6.

Lancaster faced a guidelines range of 51 to 60 months of imprisonment. (Dkt. 68 at 15.) The Government recommended a two-level downward departure, and on August 29, 2023, after accepting that recommendation, the Court sentenced Lancaster to 40 months of imprisonment on

each of Counts 1 and 2, to be served concurrently. (Dkt. 22; Dkt. 73 at 2.) On March 21, 2024, the Court granted a motion by the parties stipulating to a sentence reduction to 32 months pursuant to 18 U.S.C § 3582(c)(2) and United States Sentencing Guidelines ("U.S.S.G.") Amendment 821. (Dkts. 86; 88.) The Bureau of Prisons ("BOP") lists Lancaster's anticipated release date (with good-conduct time included) as November 8, 2025. https://www.bop.gov/inmateloc/ (last visited April 9, 2024).

Lancaster has filed a motion for compassionate release *pro se*.[1] (Dkt. 78.) Lancaster argues that he establishes extraordinary and compelling reasons for compassionate release because he wishes to be at home to provide care for his minor son who has experienced traumatic brain injury resulting from a car accident. *Id*. at 12. The Government has filed opposition to the Motion, (Dkt. 79), and Lancaster filed a reply, (Dkt. 85). The Motion is now ripe for the Court's consideration.

## II. <u>DISCUSSION</u>

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Yet, under one exception to this rule, a court may reduce a sentence "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable," if it finds that there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The Seventh Circuit has held that district courts have broad discretion in determining what constitutes "extraordinary and compelling reasons" under the statute. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). The district court must "consider[] the applicant's individualized arguments and evidence," *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), but ultimately, "[t]he movant bears the burden of establishing 'extraordinary and compelling reasons' that warrant a sentence reduction." *United States v.*

[1] The Court notes that counsel has filed an appearance on Mr. Lancaster's behalf for the sole purpose of representation related to a potential request for a reduction in his sentence pursuant to Amendment 821 of the United States Sentencing Guidelines. (Dkt. 81.) Mr. Lancaster remains *pro se* for the purpose of this motion.

*Newton*, 996 F.3d 485, 488 (7th Cir. 2021). On this point, the United States Sentencing Commission recently amended the Sentencing Guidelines Manual to identify several new circumstances as "extraordinary and compelling" reasons potentially warranting compassionate release. *See* U.S.S.G. § 1B1.13 (Nov. 2023).

**A. Exhaustion**

Section 3582(c)(1)(A) includes an administrative exhaustion provision, which states that a court may reduce a defendant's sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The exhaustion requirement of § 3582(c)(1)(A) is a mandatory claim-processing rule that "must be enforced when properly invoked." *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021). The Seventh Circuit has held that "in order to properly exhaust, an inmate is required to present the same or similar ground[s] for compassionate release in a request to the Bureau as in a motion to the court." *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). A primary purpose of the exhaustion requirement is to provide notice to the Warden of the defendant's claims. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) (evaluating an exhaustion defense in a § 1983 claim) ("Thus, once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement.").

Here, on October 24, 2023, Lancaster sent a request to the Warden of his facility stating, "in light of the COVID-19 pandemic, my positive institutional adjustment, family circumstances, medical conditions and recent changes in law[,] I respectfully request compassionate release." (Dkt. 78-1 at 2.) The following day, he received a response from his warden denying his petition

due to lack of documentation and encouraging him to review the BOP Program Statement 5050.50 to ensure he meets the criteria for compassionate release. *Id*.

The Government invoked the defense of exhaustion arguing that Lancaster failed to ask the Warden for release based on the reasons in his current motion to the Court. (Dkt. 79 at 5.) The Government contends that he did not mention his son's medical conditions or any information about his caregiver in his petition and therefore did not sufficiently explain his grounds for release. *Id.* at 5–6.

Lancaster argues that he has properly exhausted his administrative remedy because he petitioned the Warden of his facility and brought his "family circumstances" to the Warden's attention. (Dkt. 85 at 2.) He argues that he is not required to provide further detail because doing so would be futile. *Id.* He contends he did not expand on his compassionate release petition because the program statement does not permit a Warden to grant release for an inmate in Lancaster's circumstances. *Id.* at 3.

The Court finds that Lancaster did not properly bring his claim to the Warden's attention in his petition. While Lancaster did note that his "family circumstances" warranted release, he failed to mention anything about his son or his caregiver. This does not provide enough information upon which the Warden could make a reasoned judgment with regard to his petition. *See United States v. Shelton*, 2023 WL 8702263, at *3 (S.D. Ind. Dec. 15, 2023).

Lancaster also has not demonstrated that he should be exempt from the exhaustion requirement because of alleged futility in petitioning the Warden. In *United States v. Moore*, the defendant claimed that he should be exempt from the exhaustion requirement because the warden of his facility had never filed a compassionate release motion on behalf of any prisoner. 2022 WL 17982907, at *2 (7th Cir. Dec. 29, 2022). The Seventh Circuit disagreed stating that "[t]he compassionate-release statute does not excuse exhaustion even if a warden is 'unavailable' because

the warden categorically refuses to move for any prisoner's compassionate release." *Id.* Moreover, the court stated that, when a prisoner encounters a recalcitrant warden, Congress has fashioned a specific mechanism for relief; "seek[ing] compassionate release themselves in federal court if a warden does not respond to their requests within 30 days." *Id.* The court held that a warden's recalcitrance does not relieve the defendant of his exhaustion duty. *Id.*

Here, Lancaster claims that a petition presented to his Warden would never be successful given his circumstances because program statement 5050.50 does not permit compassionate release under the facts of Lancaster's case. (Dkt. 85 at 3.) BOP program statement 5050.50 states "[t]he criteria for a [compassionate release] request may include the death or incapacitation of the family member caregiver of an inmate's child." Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g), U.S. Department of Justice, Federal Bureau of Prisons, Program Statement 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf. This language mirrors that of the United States Sentencing Commission's policy statement currently in force regarding when extraordinary and compelling reasons for release are present. U.S.S.G. § 1B1.13(b)(3)(A) (permitting a court to find that extraordinary and compelling reasons exists due to "[t]he death or incapacitation of the caregiver of the defendant's minor child.").

Lancaster's claim that compassionate release would never be granted under Program Statement 5050.50 therefore rests on one of underlying premises: (1) he concedes that he does not meet the guidelines provisions for compassionate release, or (2) his warden is recalcitrant and would not grant his motion even if he met the requirements. Lancaster makes no concession that he does not qualify under the guidelines, and his contention that he does present extraordinary and compelling reasons for release is analyzed below. Lancaster's claim must be that, identical to the claim by the defendant in *Moore,* the warden is recalcitrant and does not fulfill their duty to move

on behalf of prisoners for compassionate release where circumstances warrant. Because such recalcitrance does not relieve the duty to exhaust administrative remedies, the Court rejects Lancaster's contention that he should be exempt from the exhaustion requirement because such recalcitrance provides no exception to the statutory requirement of seeking administrative relief. For these reason, Lancaster's Motion must be **denied**.

**B. Compassionate Release**

Even if Lancaster had properly exhausted administrative remedies, the Court still finds that he is not entitled to early release because he has not established extraordinary and compelling reasons for his release and the § 3553(a) sentencing factors weigh against his release.

Lancaster claims that he establishes an extraordinary and compelling reason for his release because he wishes to be at home to provide care for his five children including one son who has serious medical issues. (Dkt. 78 at 12.) He states that his son's mother has been providing care for his son but struggles to do so, and she has been forced to work two jobs due to the financial strain of his absence and has her own health challenges which make providing care more difficult. *Id.*; (Dkt. 78-3).

As stated above, one extraordinary and compelling reasons for release is "the death or incapacitation of the caregiver of the defendant's minor child," U.S.S.G. § 1B1.13(b)(3)(A). But that is not the case here. Lancaster has presented no evidence that his son's mother is incapacitated. He states she has general health issues and has provided nothing specific regarding the degree of her health problems. (*See* Dkt. 78 at 12; 78-3.) While the Court is sympathetic to the difficulty the mother of Lancaster's children faces in raising children without a partner while handling her own health issues, her difficulty appears to the Court to be equivalent to the difficulties faced by single parents across the country who often struggle with their children's and their own health concerns. Moreover, many inmates have children with medical concerns who are in the care of

someone who experiences difficulty raising them without assistance. A desire to return home to help them is common, not extraordinary. For these reasons, the Court finds that Lancaster has not met his burden to establish that his desire to be at home to provide care for his children is an extraordinary and compelling reason for his release whether considered alone or in combination with any other reason.

Moreover, even if the Court were to assume that Lancaster had established an extraordinary and compelling reason, Lancaster is not entitled to compassionate release because the sentencing factors under 18 U.S.C. § 3553 do not weigh in his favor.[2] Weighing against him, Lancaster committed a serious crime in which he betrayed the public's trust in the United States mail system. His crime resulted in losses over one million dollars to numerous Indianapolis businesses. (Dkt. 68 at 6.) Further, Lancaster is not scheduled to be released from prison until November 2025, and he has served less than a half of his 32-month sentence. Releasing him now would be a substantial and unwarranted reduction.

In light of these considerations, the Court finds that releasing Lancaster early would not reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, or protect the public from further crimes. *See United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021).

[2] These factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the defendant's crimes; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

## III. CONCLUSION

For the reasons stated above, Lancaster's Motion for compassionate release, Dkt. [78], is **DENIED**.

**SO ORDERED.**

Date 4/15/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

James Lancaster, #66052-509
FCI Terre Haute
Federal Correctional Institution
P.O. Box 33
Terre Haute, Indiana 47808

Jacob D. Leon
INDIANA FEDERAL COMMUNITY DEFENDERS
jacob_leon@fd.org

Adam Eakman
UNITED STATES ATTORNEY'S OFFICE
adam.eakman@usdoj.gov